and we have the same counsel for the next case and the next case is 5-16-524. Counselor, are you ready to proceed? May it please the court, Counselor. For the record, I'm Lawrence O'Neill and I represent Mr. Ludy in this appeal. This is a direct appeal from a jury trial Mr. Ludy was found guilty of aggravated battery of a child involving John Fordson, who was the son of Mr. Ludy's girlfriend, Terea Coleman. I raise two issues in this appeal. In argument one, I ask this Court to reverse the conviction for aggravated battery of a child because the State failed to prove the essential element of the offense beyond a reasonable doubt, namely, the gentleman sustained bodily harm. As charged in the pertinent statute for the offense, the State had the burden to prove that in committing a battery, Mr. Ludy knowingly caused bodily harm to the gentleman and that he struck him multiple times about his body with his fists. Bodily harm is defined as causing physical pain or damage to the body such as bruises, lacerations, or abrasions. In short, bodily harm means some damage or injury. The State claimed that the underlying offense was that Mr. Ludy punched the gentleman in the chest on September 28, 2013. Mr. Ludy admitted that he performed this act. However, there was insufficient evidence that this caused bodily harm to the gentleman. The State's evidence regarding the harm and injury to the gentleman came from Dr. Christopher Weingarten, who examined the gentleman at the hospital after the incident. Dr. Weingarten identified several photographs of the gentleman from the examination. These photographs show multiple linear bruises on the front and back legs and buttocks. According to Dr. Weingarten, linear bruises are not caused by a hand, but result from being whipped with a belt, a strap, or a ruler. The front of these bruises were in various stages of healing, meaning that they occurred at different days over a period of time. Most importantly, as it relates to the charge here, Dr. Weingarten found that the gentleman's chest was unremarkable, showing no bruises, lacerations, or abrasions. Dr. Weingarten concluded that the gentleman suffered child abuse with a diagnosis of linear bruises. So the injuries, the bodily harm to the gentleman was the linear bruises on his legs and buttocks. Again, the charge alleged that Mr. Louis struck the gentleman with his fist. The linear bruises on the legs and buttocks do not relate to the charge defense, as the linear bruises resulted from the gentleman being whipped with a straight-edged object, and the charge involved injury to the gentleman from being hit with a fist. Again, Dr. Weingarten found the gentleman's chest unremarkable and only noted the linear bruises on the legs and buttocks. Thus, Dr. Weingarten provided no evidence to support the state's case that the gentleman sustained bodily harm from being hit by Mr. Louis' fists. Moreover, the gentleman's testimony did not indicate that he suffered bruising or physical pain from being punched in the chest by being struck with Mr. Louis' fist. He did testify that there was pain that occurred when he was whipped with a belt, but this did not satisfy the charge that Mr. Louis hit with his fists. So the state failed to prove the element of the charge that the gentleman suffered bodily harm from being struck by Mr. Louis' fists. Mr. Louis did not have notice and did not defend on the bruises related to the linear bruises from a straight object. The charge alleged hit with his fists. The state's theory of the case was hit with a fist. There was no evidence of any injury, bruises, lacerations from being hit with Mr. Louis' fists. Therefore, the state did not prove the essential element with respect to the charge of bodily harm. Therefore, I ask this Court to reverse this conviction for aggravated battery of a child. In argument two, I ask this Court to reverse the conviction and demand for a new trial because the trial court abuses discretion by granting the state's motion to join the first-degree murder charge involving Torian with the aggravated battery of a charge which involves the gentleman. It was error to join the charges because the aggravated battery of a child charge was completely separate from the murder charge involving different individuals and on different dates, and it was not part of the same comprehensive transaction, and the joint trial was extremely prejudicial. Your client, though, took the position, I think, correct me if I'm wrong, that he didn't do any of this to these children. I mean, he didn't do the degree of damage, let me put it. He was a disciplinarian. Correct. He admitted that. But when it came to all of the injuries and the punching and this, he took the position that he didn't injure these children as explained or as alleged. As alleged, I would say that's true. I mean, he – again, the allegation was he hit the gentleman with his fist that caused bodily harm. He certainly – he did admit – Multiple times. Your Honor, that relates to the length of bruises. I thought the charge was – Multiple times with his fist, correct. Okay. But there's no – there was no – Dr. Weingarten did not testify that there were any injuries, bruising, flacerations, abrasions from a fist. Okay, but I'm talking about the joinder issue now. Yes, okay. So when you talk about the joinder, when you think about the joinder, if you think about it in terms of your client just denying these kinds of injuries at all, then what's the harm of the joinder? Well, the harm of the joinder – well, I don't know if I would quite phrase it that he denied any – he was defending against the charge, the specificity of the charge. But going to that, the harm to the – with joining these cases is if I'm defending on the aggravated battery of a child, for instance, the state, on a joint trial, was allowed to have extensive testimony about the alleged murder of Torian. Now, that would have prejudiced Mr. Rudy's defense on the aggravated battery of a child charge because a jury would have known or would have seen this extensive testimony from Dr. Manduri, for example. And the risk is – and that's always the case, the risk with other crimes evidence – or other evidence of another offense – is that it overpersuades the jury that the defendant is a bad person who deserves to be punished. Now, all of this evidence about the murder certainly had to influence the jury on its deliberations of the aggravated battery of a child charge, and certainly would have tainted the jury's deliberations where it is – it exposed the jury to the evidence regarding the murder that it would not have been exposed to in separate trials. And that would have – that prejudiced Mr. Rudy. So it was on the aggravated battery of a child charge and vice versa. You know, the bruises, the linear bruises, whatever. But the evidence that he put on was there's no evidence of the multiple fists, there's no evidence of this punch. All the evidence was minimalized, right? And in fact, the jury came – I think the jury came out with a question. They did, a grape bottle. And they wanted the court to define grape bottles. Right, that's correct. So it seemed like your client, in depending on the charges, the specificity of the charges, was indeed saying, hey, I didn't cause grape bodily harm or I didn't know that it was going to cause grape bodily harm. And that happened on both children. But the counsel did object to the motion for Joinder for the reason that I'm arguing here today that the extensive evidence from the collateral offense would have to have affected and prejudiced him on the other charge. What do you think the effect of the very detailed autopsy photos would have had on the aggravated battery situation? Well, I think it would have been extremely prejudicial. And one of my third arguments on the murder conviction, on the murder charge, was that autopsy photographs were improperly admitted, showing Torian's skull and brain, when there was no issue of dispute as to the cause of death. Now, those photographs would not have come in at a separate aggravated battery or child trial. I assume that the autopsy evidence arguably has a relevancy with this issue of the allegation that the deceased child hit his head on the refrigerator. Okay, you can argue that this shows that that wasn't necessarily true because there was no trauma to the skull. Fine, that's in the murder case. But it seems to me highly prejudicial to have that come in an aggravated battery case. Absolutely. Even if it was a severance. Although evidence of complicity would come in, you'd hear about the murder case, but you never would see that as autopsy.  Thank you. Thank you, Your Honor. Good morning again, Your Honors. Counsel, may it please the Court. Again, my name is Valerie Osment, and I represent the people of the state of Illinois in this matter as well. And to be clear for this record, for the audio as well, I did file a motion to consolidate these two appeals for purposes of oral argument because the exhibits were only included in 0523 and not 0524. So every exhibit that I refer to in my brief and in my oral argument in this case were included with the 0523 case. That motion was denied. So in light of the fact that we denied your motion to consolidate, you still want us to consider the exhibits in the other appeal, right? It was one trial, yes, Your Honor. So it seems like if you made an oral motion to adopt that record in this case, we could then consider that motion. I would make an oral motion for this Court to consolidate these two cases for purposes of appeal. For purposes of oral argument, yes. For purposes of reviewing the record. Yes. Make an oral motion. We'll take it with the case. Whenever I got the order back from this Court, it did say that my motion was denied. However, one panel would hear both cases back-to-back so that the same panel would be deciding both cases. I'm more concerned about the record. Yes. Not the briefs. You have separate briefs. Yes. But you said exhibits are in the other case, but not in this one. Correct. And I want to be able to review the exhibits in this case, which is 15-160524. Yes. From 15-160523. That's what you were asking. Yes, Your Honor. Okay. So as to the defendant's first argument, he's again challenging the sufficiency of the evidence for the activated battery of a child, to the gentleman, saying that it was sufficient to prove him guilty beyond a reasonable doubt. However, Your Honors, we have to make sure that this case is viewed with all presumptions in line with the jury's verdict. We had a jury trial that was overseen by a competent trial judge. It is the jury's job to weigh the evidence and determine its credibility. The jury was given jury instructions, and they are presumed to have followed them. And given all that, the jury's verdict is entitled to great deference. What about Justice Wharton's question of Mr. O'Neill about the impact of having brain autopsy photos shown in an aggravated battery case? Yes, Your Honor. The only photo – there were only three photos shown and admitted into evidence in the prior case. And one of those was – What prior case? The case – not prior case, I'm sorry. Prior appeal? The murder. 15-160523? Yes, the murder trial. The murder trial portion of this trial, there were only three photos, and they're included in my brief, and I showed them to this panel in my first argument. Two of them are of Torian's chest, and one of them is of his cranium. But the court took due care to make sure – at first, the photo – and you'll see it in the record – it was a shot from further away, and it showed Torian's body with his brain open on the table. However, the court made sure to only allow in the photo that was cropped, and I have that over here. This was the only photo that was allowed in. It didn't show his brain. It just showed partially what Mandery was looking at when she was – What exhibit is it? 103A, Your Honor, and it's on page 15 of my first brief. Of your first brief, not this brief? Correct. Because this is the Torian case, and this case that we're talking about now. Is that the brain? Yes. We didn't have a brain issue in that case. Correct. But Your Honor, Justice Wharton asked – And that was my question to you. What about the impact of that brain photo in an aggravated battery case? Do you think it's prejudicial? Is this the one you're talking about? It just shows the skull and the brain? I do not believe it's prejudicial, Your Honor. And actually, the trial court took this matter up below. The trial court determined that the evidence related to the defendant's abuse of both boys would have inevitably been presented to the jury in either case had it been severed pursuant to 725 ILCS 5-115-7.4, which the state argued in its motion for Joiner. That section allows for the admissibility of other acts of domestic violence committed by the defendant as substantive evidence if it is relevant for prosecutions in which the defendant is accused of an offense of domestic violence or first-degree murder. When the trial court initially declined to join these two cases, it did state, however, that it would allow the state to introduce the defendant's abuse of Zajaman in the defendant's trial for the first-degree murder charge of Torian. So either way, this evidence would have been presented to the jury, whether it was joined or severed. Well, this seems like a deviation from the rules in that the evidence here in the murder case, skull, shows that the minor was not in any way injured about his head or the skull. And yet this came in as evidence in the murder trial, and also the jury that was trying to aggregate his battery charge got a chance to see this. Yes, Your Honor. So it seems like, you know, that was highly prejudicial. Your Honor, as opposing counsel mentioned in his argument just a moment ago, he claimed that there was no dispute about how the child died. However, that's not true, and the trial court also disagreed. The trial court said at the sentencing hearing with respect to the admission of the autopsy photographs, there was some mention, although not argued today, about some autopsy photographs that were used at trial and that were objected to. I would note that the number of autopsy photos, there were dozens, but only three were included in the record. The state wanted to get in many of them, but the court denied much of that. I didn't allow the state to use them during the trial, so I allowed the photographs in, but I actually didn't let the state use them, so I was very cautious about the autopsy photos and how they were used. I ordered them to be cropped. While autopsy photos are disturbing just in the nature of what they are, I don't believe that those were substantially prejudicial in any way. Moreover, at a hearing for a motion for a new trial after the cases were concluded, the defendant argued the same thing, and counsel for the defendant argued that, with respect to the defendant's theory of the case, counsel conceded in his opening statement that Nanderi's examination revealed that there were no injuries to his scalp, head, or neck, and as a result, this should not be controverted by the defense at trial. But the defense argued against the admission. However, the trial court disagreed again and said, I disagree with your assessment because the testimony that this court heard was multiple times. Also in an interview that was played, the defendant says that the child hit his head on the refrigerator and then he fell down and that he hit his head and then he fell by the refrigerator or might have hit his head. So just because your opening didn't address that doesn't mean in closing you don't have the right to, as the evidence was presented, argue that. So the evidence was different than what's being presented so far. I believe that there was an argument to be made that the child hit his head and this injury was the cause of that. So the autopsy photograph was allowed in to rebut any argument that the defense might have made that he did not kill Torian, that he hit his head on a refrigerator. But that was on the murder charge. Was there limiting instruction given as to that autopsy photograph? Was there any limiting instruction that the jury should only consider those autopsy photos for the purpose of the murder charge as opposed to the aggravated battery? Do you know? Your Honor, I don't remember any special instruction. However, obviously with it being two separate crimes against two separate boys, then the jury couldn't consider Torian's scalp picture in to whether or not he committed the aggravated battery against Zajon. How could they get to consider that? If the allegation is you created an aggravated battery by punching this child multiple times and it's a different child, why do they get to unabashedly look at a brain, a skull cap, without a limiting instruction? Well, many of the factors that go into deciding whether or not to join a trial, join two different offenses for the same trial, is whether the offenses occurred on or about the same date and in the same location and thus were part of the same comprehensive transaction and much of the same evidence is used, and all of those factors are present in this case. The defendant admitted, and the interview was played at trial before the jury, that he punched both boys that morning on September 29, 2013. So the incidents were close in time. Therefore, well, I understand the joinder argument, but even in a case where there's joinder, limiting instructions are given all the time, so that, you know, because of the joinder and the different offenses, the jury knows what to do with the different exhibits. And so I'm asking, do you know if any limiting instruction was given or just with the standardized IPI criminal instructions given? Opposing counsel might know. I don't remember what the jury instructions were in this case. However, I do have the fact that the court did make note at sentencing that he ordered the photo to be cropped, and so that was she ordered. It was Judge Nant, wasn't it? I don't recall that. It was a woman. Oh, sorry. She ordered that the photos be cropped, and they were cropped, and so she made due care to make sure that photos weren't shown that were overly prejudicial. It wasn't. There was a photo of his actual brain exposed, but that was not allowed again. I recognize that joinder is within the Court's discretion and will not be disturbed, you know, absent an abuse of discretion. In this situation, what was the common scheme that the State alleged that justified the joinder of these cases? So the count itself was amended, and at first the Court did decline to join him, but after the amended indictment, which was changed to say he committed a battery, et cetera. The day before the alleged murder? Yes, on September 29th. Okay, that's one. You've got time. Yes. You can argue that that's the first prong of the test. Where is the common scheme, though? You've got a coincidence of two incidents occurring at roughly the same time a day apart, but what is the common scheme, the total picture? There was multiple eyewitnesses that testified. Zajaman's mother, Toria, testified that both boys were disciplined much at the same time. When they would get in trouble, the defendant would strike them based on how old they were. Zajaman was 7 years old at the time. He would be struck 7 times with a belt. Toria was 4 years old. He would be struck 4 times with a belt. And it was always usually close in time when that took place. And much of the same evidence to another point in whether or not to join the trial was used at trial. Evidence by the fact that the exhibits were only included in one appeal in this case, it's all the same evidence. Thank you, counsel. Thank you, Your Honor. First off, Your Honors, I would make an oral motion to consider the exhibits in both offenses. Both cases that are entered, you know, they were tried together. They were part of the same, part of the same, the two go together. And I ask this Court to review those exhibits in both cases. With respect to the common scheme on disjointer, there was no common scheme. To determine whether there was a common scheme, you look whether both offenses provide a larger criminal, are a piece of a larger criminal endeavor. And there's no common scheme here. There's no evidence that was needed to prove, no evidence from the murder was needed to prove the aggravated bed or the child and vice versa. There was no comprehensive transaction. It was inappropriate to join these cases. And in particular, in addition to the no comprehensive transaction, the prejudice from this joint trial was very, very substantial. And it's important, this whole jointer issue and the amended charges that came up, the first court first denied the motion for jointer. And then the State amended the charge on the aggravated bed or the child to narrow the date. The trial court denied the motion for jointer because the original charge alleged from, like, February to September of 2013 on both charges so that there was an amended motion. And then the State then narrowed it on the amended motion on the aggravated bed or the child to be just, they occurred on September 29th. I have a question about that. Yes, correct. Correct. So the State. Can I ask you one question? Sure. Okay. The change of the alleged punch in the chest that occurred the day before between the minor where the aggravated battery was generated, was when the trial court got the State's amended charge saying that there was a punch the day before the alleged murder. Correct. Now, there are several components of this finding of deciding whether or not it was part of the same comprehensive transactional scheme. And the physical and temporal proximity between the two offenses is just one. Right. So did the Court go into the rest of it that justified the change and its ruling denying the jointer? No, Your Honor. No, the Court just said that changing its ruling was based upon the fact that the amended charge changed the date. The Court didn't go initially into any great elaboration on the factors that are generally considered on whether jointer is appropriate. But as I argued in my briefs, those do not apply. These factors do not apply. Again, you mentioned time and location is one. And it was only marginally proximate in time and location. It really is neutral at best. There was no common scheme. There was no link in the evidence in both cases where one evidence for the murder charge was needed to prosecute the aggravated battery of the child and vice versa. But even more than that, there was extreme – even though there was no comprehensive transaction, none of these factors applied, the prejudice was extreme on both of these – on this joint trial. And it cannot be underestimated the effect of that prejudice in denying a fair trial in this case. Any other questions, Your Honors? I ask Your Honors to reverse the conviction for aggravated battery of the child. Thank you. Thank you. The case will be taken under advisory before it will be in recess.